**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| VICOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FII USA INC., (a/k/a Foxconn Industrial Internet USA Inc.), INGRASYS TECHNOLOGY INC., AND INGRASYS TECHNOLOGY USA INC.,<br><br>Defendants. | Case No. 1:24-cv-10060-LTS |

**DEFENDANTS' EMERGENCY MOTION TO STAY UNDER 28 U.S.C. §1659 AND TO VACATE TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 2

**ARGUMENT** .......... 5

**I. Section 1659 Requires a Stay and Relief from Pending Orders.** .......... 6

**II. Vicor's Recent Conduct Confirms the Importance of Prompt Relief.** .......... 9

**III. Vicor's Recent Conduct also Justifies Vacating the TRO On Its Own Terms** .......... 11

**CONCLUSION** .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Exergen Corp. v. Kaz USA, Inc.*,
2015 WL 4506472 (D. Mass. July 24, 2015)....................7

*Hui v. Castaneda*,
559 U.S. 799 (2010)....................8, 9

*Ins. Co. of N. Am. v. Northampton Nat'l Bank*,
708 F.2d 13 (1st Cir. 1983)....................10

*Johnson v. Allen*,
2022 WL 16823008 (D. Mass. Nov. 8, 2022)....................13

*Norman v. U.S.*,
942 F.3d 1111 (Fed. Cir. 2019)....................6, 9

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945)....................13

*In re Princo Corp.*,
478 F.3d 1345 (Fed. Cir. 2007)....................6, 9, 10

*U.S. v. Baldacchino*,
577 F. Supp. 12 (D.P.R. 1983)....................11

*U.S. v. Whindleton*,
797 F.3d 105 (1st Cir. 2015)....................8

**Statutes**

19 U.S.C. §1337.................... *passim*

28 U.S.C. §1659.................... *passim*

35 U.S.C. §283....................9

35 U.S.C. §284....................9

35 U.S.C. §315....................8

**Other Authorities**

Foley & Lardner LLP, *Is the International Trade Commission the Most Patent-Friendly Venue with a Complainant Success Rate Near 90%?* (Apr. 24, 2018), https://shorturl.at/cQ056 ....................3

U.S. ITC, *Section 337 Statistics* (Oct. 10, 2023), https://shorturl.at/krRSU....................3

## INTRODUCTION

Defendants respectfully seek an immediate stay of this action and relief from all pending orders under 28 U.S.C. §1659, which requires staying "proceedings in the civil action with respect to any claim that involves the same issues involved in [Vicor's] proceeding before the [International Trade] Commission" (ITC). This action falls squarely within the language of the statute. Each of Vicor's "claim[s]" here depends on whether the parties' agreements include an arbitration obligation and a patent license, Doc. No. 1 at 7-9, and those are precisely the "same issues involved in [Vicor's ITC] proceeding," 28 U.S.C. §1659, where the Administrative Law Judge (ALJ) will decide whether to terminate proceedings against these Defendants in favor of arbitration and, if not, whether Vicor granted Defendants a license.

Beyond the controlling text, Vicor's conduct over the weekend illustrates the need to firmly—and quickly—apply the law. Hours after this Court entered a temporary restraining order (TRO) based on Vicor's purported objections to arbitrating *in China*, Vicor turned around and demanded that Defendants "immediately withdraw their motion to terminate" *in the ITC* via an email copying the ITC's investigative staff. Defts.Ex.A. That is a frontal assault on Congress's statutory scheme; not just on 28 U.S.C. §1659's reservation of issues to the ITC, but on 19 U.S.C. §1337's statement that Defendants may raise "arbitration"—indeed, "[a]ll legal and equitable defenses"—before the ITC. Vicor, however, would use the TRO to circumvent the ALJ's consideration of the arbitration issue (and load the dice on the patent question that stems from the common issue of which parties' terms constitute the agreement). That tactic is especially perilous given that *the hearing on the merits of this case is scheduled to start in April,* meaning that Vicor is trying to run out the clock until then. Far from Vicor's protests of "due process," Doc. No. 8 at 6, it is Vicor who seeks to deprive Defendants of their statutory protections.

Finally, Vicor's conduct provides several additional and independent bases for vacating the TRO, including Vicor's reneging on its express representations about the reasons for the TRO. Vicor's *only* explanation for why the "balance of the hardships favor[ed] Vicor" was that "Defendants *will retain all legitimate dispute resolution mechanisms*." Doc. No. 8 at 10 (emphasis added). Yet Vicor now seeks to preempt Defendants' ability to raise defenses in the ITC with the goal of forcing Defendants into the fast-approaching hearing. Vicor's conduct also undercuts its irreparable-harm and public-interest arguments because there is nothing injurious or involuntary about the ITC—a forum of Vicor's own choosing—addressing issues that Vicor would use the TRO to circumvent.

Vicor cannot try to turn a shield into a sword. Vicor told the Court that a TRO would preserve the parties' rights, maintain the status quo, and protect Vicor from a tribunal to which it supposedly did not consent; in reality, Vicor now seeks to use the TRO to interfere with Defendants' ability to protect themselves in a fast-moving proceeding of Vicor's own choosing. Neither the text of §1659 nor equity allows this procedural gambit, and each now independently requires an immediate stay of this action (and all pending orders) and vacatur of the TRO.

## BACKGROUND

Over the past few years, Defendants have purchased components from Vicor for integration into Defendants' products.[1] Vicor alleges that some of Defendants' products also contain components that infringe Vicor's patents. On July 12, 2023, Vicor brought a patent-infringement action in the Eastern District of Texas against some of the Defendants, their affiliated entities, and

[1] Solely for purposes of this emergency briefing, Defendants FII USA Inc. (a/k/a Foxconn Industrial Internet USA Inc.), Ingrasys Technology Inc., and Ingrasys Technology USA Inc., adopt Vicor's collective characterization of them. Similarly, Defendants cite Vicor's allegations and exhibits for the sake of simplicity without admitting their accuracy, and Defendants reserve all objections to jurisdiction, venue, and service.

other companies allegedly involved in the infringement. Defts.Ex.B at 1, 117. The same day, it filed a complaint in the ITC against many of the same parties, including all Defendants in this action before this Court. Doc. No. 5-2 at 2-3, 48.

Vicor's tactics were not surprising. The ITC offers "many advantages" to patentees, who in recent years have enjoyed up to an 88% success rate in cases decided on the merits.[2] ITC proceedings also "are extremely fast-paced" and can result in the "powerful remedy[]" of "an exclusion order prohibit[ing] infringing products from entering the United States." *Supra* 3 n.2; *see also* 19 U.S.C. §1337(d) ("[e]xclusion of articles from entry"). So, although the ITC cannot award many types of relief available in district courts (like certain injunctions and money damages), the ITC's many "strategic advantages for patent owners" make it an enticing place for claimants like Vicor. *Supra* 3 n.2.

The ITC framework does, however, afford modest statutory safeguards to respondents. The ALJ can terminate proceedings in favor of "arbitration." 19 U.S.C. §1337(c). Respondents are entitled to present "[a]ll legal and equitable defenses." *Id.* And, when a respondent simultaneously faces a district court action that "involv[es] parties that are also parties to [an ITC] proceeding," the respondent can seek a mandatory stay of the "proceedings in the civil action with respect to *any claim* that involves the same issues involved in the [ITC] proceeding." 28 U.S.C. §1659 (emphasis added). In other words, Congress has offered patentees the options of both the ITC and a district court, but at the risk of respondents unilaterally limiting proceedings to the ITC and the ITC's narrower powers.

---

2 *See* Foley & Lardner LLP, *Is the International Trade Commission the Most Patent-Friendly Venue with a Complainant Success Rate Near 90%?* (Apr. 24, 2018), https://shorturl.at/cQ056; *see also* U.S. ITC, *Section 337 Statistics* (Oct. 10, 2023), https://shorturl.at/krRSU (indicating success rates between 88% and 50% since 2015).

Because Vicor opted for the ITC route, the Eastern District of Texas stayed its proceedings. Doc. No. 20-3 at 2-3. The matter thus is proceeding before the ITC, where Defendants asserted a right to arbitration and a license right to the at-issue patents—arguments which all involved the Defendants claiming that purchase orders it sent to Vicor were accepted and set the terms of the parties' agreements. *E.g.*, Doc. No. 5-3 at 2, 8, 11-12 (arguing that the agreements "grant a license under the Asserted Patents … and contain an arbitration requirement"); Defts.Ex.C at 1 (Vicor denies that the agreements include a license and arbitration obligation); Doc. No. 8 at 5 (similar); Doc. No. 1 at 7 (discussing the ITC contentions). The arbitration question (which involves the dispute over the agreements' terms) is now fully briefed and pending decision. And the license question is likely to be decided in the coming months, as the ALJ has scheduled a hearing to begin in April 2024 and has set October 3, 2024 as the due date for his Initial Determination. Defts.Ex.D at App'x A.

Vicor opposed the motion to terminate in the ITC, but also filed a complaint in this Court raising three duplicative "claim[s] for relief." Doc.No.1 at 7-9. It sought an injunction against arbitration on the basis that Vicor "never consented to such arbitration proceedings." *Id.* at 8. It also sought a declaratory judgment on the identical ground that it "is not bound by the … Arbitration Terms in … Defendants' purchase orders." *Id.* at 10. And it sought a declaratory judgment on the parallel theory that it also "is not bound by the [patent] License Terms in … Defendants' purchase orders." *Id.* at 9.[3]

Vicor then moved for a TRO enjoining the arbitration. Doc. No. 8. In its motion, Vicor represented that "[t]he balance of the hardships favors Vicor" for the sole reason that "*Defendants*

---

3 Consistent with the Court's desire to address the substance of the contract issues on a fuller record, Defendants do not litigate these issues in this motion. It is sufficient for present purposes that the contract issues are presented in both this action and Vicor's ITC proceeding.

*will retain all legitimate dispute resolution mechanisms*." *Id.* at 10 (emphasis added). As to the other TRO factors, Vicor claimed that it would suffer irreparable harm by being "forced to participate in a foreign arbitration against its will," *id.* at 9, and that "the public has an interest in ensuring that arbitrations are voluntary," *id.* at 10.

The Court granted the TRO. Doc. No. 27. The order stressed the "absence of countervailing considerations in the form of meaningful prejudice" to Defendants. *Id.* at 3-4. It cautioned that its "rulings are necessarily temporary and subject to revision." *Id.* And it deferred "consider[ation of] the implications of 28 U.S.C. §1659," explaining that "Defendants can file a motion under that statute if warranted." *Id.* at 3.

Just hours later, Vicor demanded in an email sent to Defendants and a member of the ITC's investigative staff that Defendants "confirm *by 9am pt on Monday* that the[y] will immediately withdraw their motion to terminate" in the ITC. Defts.Ex.A at 1 (emphasis added). Defendants responded to Vicor that they do not believe that the TRO requires withdrawal, but that they have informed the ALJ of the TRO.

**ARGUMENT**

The plain text of §1659 and Vicor's recent conduct independently confirm why this Court must now stay all proceedings and orders, as well as vacate the TRO. The unambiguous terms of the statute leave no room for Vicor to pursue "any claim" in this Court that "involves the same issues involved in the [ITC] proceeding," yet each of Vicor's claims here turn on the same contractual "issues" that are presented in Vicor's chosen forum. 28 U.S.C. §1659. Beyond the plain text (which is dispositive), Vicor's conduct further demonstrates the need for immediate relief and provides several independent bases to vacate the TRO. Not only did Vicor misrepresent to the Court that Vicor wanted a stay only to avoid purported arbitration harms—whereas Vicor

really wanted leverage to interfere with Defendants' ability to raise issues before the ITC—but Vicor's desire to wield the TRO in the ITC proceedings changes the balance of the equities by seeking to deprive Defendants of critical defenses in advance of a fast-approaching hearing.

## I. SECTION 1659 REQUIRES A STAY AND RELIEF FROM PENDING ORDERS.

Section 1659's prerequisites are straightforward: When there is (1) "a civil action involving parties that are also parties to a proceeding before the [ITC] under section 337 of the Tariff Act of 1930," (2) "at the request of a party to the civil action that is also a respondent in the [ITC] proceeding," made within "30 days after the district court action is filed," (3) "the district court *shall stay* … proceedings in the civil action with respect to *any claim that involves the same issues* involved in the proceeding before the [ITC]." (Emphases added). All elements are present here.

First, this civil action involves common parties with the ITC action; in fact, all parties to this action are parties to the ITC action. *Compare* Doc. No. 1 at 1 (civil complaint), *with* Doc. No. 5-2 at 2-3 (ITC complaint). Vicor also admits that it brought that ITC action "under section 337 of the Tariff Act of 1930." Doc. No. 1 at 6; *see also* Doc. No. 5-2 at 8.

Second, Defendants are requesting relief within 30 days of Vicor filing this action on January 8, 2024. *See* Doc. No. 1 at 11.

Third, a stay "shall" issue because all claims in this civil action (which seeks to have the Court interpret the parties' agreements) involve the same issues involved in the ITC action (where the ITC will need to interpret the parties' agreements). Section 1659's "use of the word 'shall' means what follows is mandatory, not discretionary." *Norman v. U.S.*, 942 F.3d 1111, 1117 (Fed. Cir. 2019); *see also In re Princo Corp.*, 478 F.3d 1345, 1348 (Fed. Cir. 2007) (granting writ of mandamus to order a §1659 stay). And a basic comparison of the proceedings here shows that Vicor's current claims not only "involve" the same issues pending in the ITC, but are inextricable

from them—in fact, the explicit basis for Vicor's complaint is that, because of the ITC's consideration of "terminat[ion]" and "licens[ing]," "there now exists a genuine and concrete dispute … regarding (a) whether Vicor has granted any intellectual property license … and (b) whether Vicor has agreed to submit disputes … to mandatory arbitration." Doc. 1 at 7 ¶¶24, 25.

The rest of the complaint reinforces the overlap. Consider Vicor's "first claim" and "third claim for relief," each of which turns on the issue of whether "Vicor has … consented to [the] arbitration proceedings" in light of the supposed terms of the "contract between Vicor and any … Defendant." Doc. No. 1 at 7-10. Vicor's assertions facially trigger the statute, because the key underlying "issue[]" of whether Vicor agreed to arbitrate is "involved in"—indeed, critical to—the ITC proceeding. 28 U.S.C. §1659. The ITC has statutory authority to "terminate" its proceedings when there is "an agreement to present the matter for arbitration," 19 U.S.C. §1337(c); the parties have briefed the issue of whether "to terminate [the] investigation based on an arbitration agreement"; and this briefing even covers the questions of whether "[t]he purchase orders constitute an agreement between parties" and whether the terms "delegated the question of arbitrability to an arbitrator." *E.g.*, Doc. No. 5-3 at 13-16; Defts.Ex.C at 1 (Vicor denies an "agree[ment] to arbitrate").

The same analysis applies to Vicor's related "second claim for relief" seeking a "declaratory judgment that Vicor is not bound by [Defendants'] license terms." Doc. No. 1 at 8. That claim seeks to resolve a parallel issue that is key to Vicor's ITC contention that "[t]he Accused Products infringe … certain claims of … Vicor['s] patents," Doc. No. 5-2 at 8—namely, whether Defendants have a license to the patents, which is "a defense to a claim of patent infringement." *Exergen Corp. v. Kaz USA, Inc.*, 2015 WL 4506472, at *2 (D. Mass. July 24, 2015). The license issue is one that the ITC *must* answer—"*[a]ll* legal and equitable defenses may

be presented in all cases." 19 U.S.C. §1337(c) (emphasis added). Sure enough, the parties have already addressed the contractual issues underlying the licensing and arbitration disputes in their recent ITC briefing and have exchanged contentions including the license defense. *E.g.*, Doc. No. 5-3 at 8, 11-12; Defts.Ex.C at 1 (Vicor denies a "license"); Doc. No. 8 at 5 (similar).

Simply put, Vicor's "claim[s]" for relief here against the arbitration and license "involve[] the same issues involved in the proceeding before the [ITC]." 28 U.S.C. §1659. That conclusion is especially inescapable given the "expansive meaning" of the word "involving," which just requires a "relat[ionship]" or "connect[ion]," *U.S. v. Whindleton*, 797 F.3d 105, 109-111 & n.4 (1st Cir. 2015)—indeed, even under a narrow view of "involving," the issues Vicor would have this Court decide are part-and-parcel of the ALJ's consideration of termination in favor of arbitration and the patent-license defense. And the reality that §1659 categorically bars district-court consideration of these issues is particularly certain given additional statutory context confirming the statute's sweeping application to "*any* claim" involving the same issues as an ITC proceeding *regardless* of the nature of the district court action. (Emphasis added); *see Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (stressing "[t]he breadth of the word[] … 'any'"). *Other* statutes limit agency-driven stays to certain types of district court actions; for example, when a party seeks *inter partes* review of a patent before the Patent Trial and Appeal Board, a narrower stay can apply to certain "civil action[s] *challenging the validity of a claim of the patent*." 35 U.S.C. §315(a)(2) (emphasis added). Section 1659 includes no such limitations, however, and generally applies to "*a* civil action" that merely has overlapping "parties" and involves "*any* claim that involves the same issues." 28 U.S.C. §1659 (emphases added); *see also Hui*, 559 U.S. at 806-07 ("[I]t is telling that Congress declined to enact a similar exception [in another statute].").

For any of these reasons, §1659 is textually unavoidable and requires a complete stay of all proceedings (and thus relief from all pending orders). The statute also leaves no room for delay; not only does it contemplate a defendant seeking relief within just "30 days after the district court action is filed," 28 U.S.C. §1659, but there is no basis for deferring "mandatory" relief that must "follow[]" from "[t]he plain language," *Norman*, 942 U.S. at 1117; *accord Princo*, 478 F.3d at 1348-49. And because courts "are required … to read the statute according to its text," any pragmatic concerns Vicor might raise about the supposed equities, the "public interest," "legislative history," or Vicor's desire for broader district-court "remed[ies]" are irrelevant. *Hui*, 559 U.S. at 804-05, 812 (Sotomayor, J.). The Court can only enforce Congress's command.

## II. VICOR'S RECENT CONDUCT CONFIRMS THE IMPORTANCE OF PROMPT RELIEF.

Beyond the dispositive statutory text, Vicor's behavior underscores the propriety of and need for immediate relief. Far from any suggestion Vicor may raise in opposition that this Court should subordinate the plain text to functionalist concerns or delay in granting relief, the record shows that all conceivable practical problems are of Vicor's own making and that Vicor has left Defendants with no choice but to seek expedited application of §1659.

To begin, any objection by Vicor that applying the law would (temporarily) deprive it of remedies in this Court is unavailing in light of Vicor's litigation tactics. Vicor made the choice to file a complaint in the ITC that promises extremely high "success rate[s]," a "rocket docket," and "powerful [injunctive] remedies." *Supra* 2 n.1. That choice came with Congressionally mandated consequences, however, including the potential loss of access to district courts (and their broader powers) during the pendency of the ITC action. In other words, Vicor knowingly opted into an administrative regime that lacks several remedies available in federal court—such as "injunctions in accordance with the principles of equity" and "damages" 35 U.S.C. §§283, 284—in the hopes

that the ITC would quickly and aggressively exercise its narrower statutory powers to exclude Defendants' products from the United States and issue a cease and desist order, *see* Doc. No. 5-2 at 47 (ITC complaint); 19 U.S.C. §1337(d), (f). But, as courts have long warned, that choice comes with tradeoffs, because until the ITC proceedings conclude a defendant can bar the plaintiff from seeking any relief "before the district court." *Princo*, 478 F.3d at 1356. Indeed, even if "the only issue" a plaintiff seeks to raise in the district court is a remedy "over which the [ITC] does *not* have authority," the statute still broadly "extends to *any* district court 'proceedings' on a 'claim' involving issues pending before the Commission." *Id.* (emphases added). Having opted-in to ITC proceedings, Vicor cannot "take the good and close [its] eyes to the bad" by jumping back and forth between ALJ and Court. *Ins. Co. of N. Am. v. Northampton Nat'l Bank*, 708 F.2d 13, 16 (1st Cir. 1983).

Vicor's more recent tactics further underscore why it makes perfect sense to give a defendant the option of invoking an ITC proceeding to foreclose simultaneous district court relief. According to Vicor's Friday-night demand sent to the Defendants and a member of the ITC's investigative staff, this Court's TRO requires Defendants to "immediately withdraw their motion to terminate" *before the ITC has a chance to examine it*, which would stand the larger statutory regime on its head and gut the limited due-process protections available to respondents on the ITC's rocket docket. Defts.Ex.A. In particular, 19 U.S.C. §1337(c) clearly states that the ITC is allowed to consider "an agreement to present the matter for arbitration" and that Defendants are entitled to present "[a]ll legal and equitable defenses." Yet Vicor seeks to *prevent* the ITC from examining the arbitration issue (and to load the dice on the license issue) ahead of a fast-approaching merits hearing in which Defendants will need to participate unless the ALJ timely resolves the arbitration question.

For similar reasons, Vicor's conduct compels the need for immediate relief from the TRO (even under the traditional factors, which should be irrelevant here because §1659 on its face compels a stay). Defendants are likely to succeed on their position that the plain text of §1659 requires a stay. If Vicor is somehow correct about the meaning of the TRO, Defendants are likely to suffer the irreparable harm of losing their statutory ability to assert arbitration ahead of the fast-approaching ITC merits hearing—in Vicor's words, of losing "the substantive and procedural safeguards provided in [the ITC]." Doc. No. 8 at 9. And, if nothing else, Defendants still face the burdens of another round of collateral litigation over the meaning of the TRO and potential tie-ups in the ALJ's urgent resolution of the arbitration question. The balance of the equities similarly favors Defendants having a full opportunity to defend themselves, whereas Vicor will lose nothing by having a forum of its own choosing render a decision under that forum's "dispute resolution mechanisms." Doc. No. 8 at 10. And "[p]ublic policy requires that the law be applied in a consistent manner," thus foreclosing Vicor's desire to pivot between adjudicators to pick away at Defendants' statutory protections. *U.S. v. Baldacchino*, 577 F. Supp. 12, 13 (D.P.R. 1983).

To be clear, all these equitable considerations, policy arguments, and pragmatic issues are irrelevant because the text is clear. But Vicor's actions illustrate why the statute exists and the need to apply the law rigorously and promptly.

## III. VICOR'S RECENT CONDUCT ALSO JUSTIFIES VACATING THE TRO ON ITS OWN TERMS.

Independent of §1659's freestanding directive, this Court should also vacate the TRO because Vicor's conduct demonstrates that its supposed bases for seeking the TRO were improper and inequitable.

First, Vicor has reneged on its *sole* argument for showing the TRO prerequisite that "[t]he balance of the hardships favors Vicor because … Defendants will retain *all legitimate dispute*

*resolution mechanisms*." Doc. 8 at 10 (emphasis added). In sharp contrast to this representation, Vicor now seeks to preclude the ITC from exercising its express statutory power to "terminate any … investigation" when there is "an agreement to present the matter for arbitration" and to interfere with Defendants' right to present "[a]ll legal and equitable defenses." 19 U.S.C. §1337(c). Vicor cannot renounce a critical argument just hours after receiving relief.

Moreover, Vicor's conduct necessarily flips any balance of the equities in favor of Defendants, evaporating the Court's premise that there were no "countervailing concerns in the form of meaningful prejudice" to Defendants. Doc. No. 27 at 3. Vicor has insisted that the parties litigate in the claimant-friendly ITC and has sought a powerful administrative injunction against Defendants, yet it now seeks to frustrate their defense by wielding a TRO that rested on "rulings [that were] necessarily temporary and subject to revision upon a more developed record." Doc. No. 27 at 3-4. Vicor also has expressed no willingness to defer the soon-approaching ITC merits hearing to allow adjudication of the arbitration issue. Given that Vicor's own TRO briefing stressed the importance of "due process" and the need for "substantive and procedural safeguards," Doc. No. 8 at 6, 9, it is impossible to sustain the TRO while Vicor is seeking to undercut the modest protections that Congress gave Defendants before the ITC.

Second, Vicor's prior representations about irreparable harm and the public interest are also incompatible with its current behavior. Vicor's motion asserted the irreparable harm of "be[ing] forced to participate in a foreign arbitration against its will," Doc. No. 8 at 6, but Vicor now seeks to use the TRO to prevent a forum of its own choosing from deciding an issue in hopes of forcing Defendants to remain involved through the upcoming hearing. And Vicor previously cited only the "public interest" in "ensuring that arbitrations are voluntary," Doc. No. 8 at 10,

which now is irrelevant for the same reason that Vicor seeks to interfere with proceedings that it started.

Third, Vicor's tactics are incompatible with the understanding that "a temporary restraining order" seeks "to preserve the status quo," *Johnson v. Allen*, 2022 WL 16823008, at *1 (D. Mass. Nov. 8, 2022), because Vicor now seeks a disruption of the ITC proceedings to hobble Defendants' rights. Before the TRO, the status quo was that the ALJ was considering Defendants' fully briefed motion to terminate the ITC proceedings. But Vicor now would use the TRO to halt that process—or at least gum it up until Vicor can make it to the merits hearing.

"[H]e who comes into equity must come with clean hands." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Rather than allow Vicor to renege on its representations and try to use the TRO to prejudice Defendants, this Court should vacate the TRO.

## CONCLUSION

This Court should stay all proceedings and orders, and vacate the TRO.

DATED: January 22, 2024

Respectfully submitted,

By: */s/Tiffany M. Knapp*

Tiffany M. Knapp
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
tiffany.knapp@kirkland.com
(617) 385-7500

Russell E. Levine, P.C. (*pro hac vice*)
Marcus E. Sernel, P.C. (*pro hac vice*)
Philip M. Cooper (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
russell.levine@kirkland.com
marc.sernel@kirkland.com
philip.cooper@kirkland.com
(312) 862-2000

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on January 22, 2024, with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by electronic or overnight mail on this same date.

By: /s/ Tiffany M. Knapp
Tiffany M. Knapp

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants has attempted in good faith to resolve or narrow the issues by conferring with counsel for Vicor on January 22, 2024, and Vicor opposes the relief sought.

By: ___/s/ Tiffany M. Knapp ____
Tiffany M. Knapp