# United States Court of Appeals
## For the First Circuit

No. 24-1620

VICOR CORPORATION,

Plaintiff, Appellee,

v.

FII USA INC., a/k/a FOXCONN INDUSTRIAL INTERNET USA INC.;
INGRASYS TECHNOLOGY INC.; INGRASYS TECHNOLOGY USA INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Gelpí, Thompson, and Rikelman,
Circuit Judges.

Marcus E. Sernel, P.C., with whom Russell E. Levine, P.C., Philip M. Cooper, Mark C. Gillespie, Tiffany M. Knapp, and Kirkland & Ellis LLP were on brief, for appellants.

Lawrence K. Kolodney, with whom Steven R. Katz, Elizabeth G. H. Ranks, and Fish & Richardson P.C. were on brief, for appellee.

March 6, 2025

**RIKELMAN**, **Circuit Judge**. The United States International Trade Commission (ITC) investigates complaints alleging unfair competition related to imported goods. A federal statute provides that until the ITC's resolution of a complaint becomes final, courts are limited in what disputes they can resolve between the parties involved in the ITC matter. Specifically, at the request of the party charged in the ITC complaint, a federal district court must stay proceedings in a civil action between the same parties "with respect to any claim that involves the same issues [as those] involved" in the ITC action. See 28 U.S.C. § 1659(a) ("Section 1659"). This case concerns when the requirements for a Section 1659 stay are triggered.

After doing business together for many years, the parties here developed a dispute about Vicor Corporation's patents. Vicor eventually filed a complaint before the ITC, alleging that Appellants (collectively "Foxconn") infringed Vicor's patents by importing knock-off products into the United States. In response, Foxconn initiated arbitration in China. Vicor then sued Foxconn in federal court, contending that it had never agreed to arbitrate and seeking to enjoin the arbitration. Despite Foxconn's request for a Section 1659 stay, the district court granted a preliminary injunction of the arbitration, concluding that it had authority to do so even though Section 1659 applied. On appeal, Vicor defends the district court's ruling but

on different grounds, arguing that Section 1659 does not apply because this case is not a parallel patent infringement action. We conclude that Section 1659's scope is not as narrow as Vicor claims and that the statute's plain text required the district court to grant Foxconn's stay request. Thus, we vacate the order granting the preliminary injunction and remand to the district court for further proceedings.

## I. BACKGROUND

### A. Relevant Facts

Foxconn assembles electronic products, and Vicor manufactures power converter modules. For years, Vicor supplied its modules to Foxconn for use in Foxconn's products.

According to Vicor, Foxconn eventually switched from Vicor's patented modules to "knock-off" modules, which Foxconn manufactured and imported into the United States from abroad. As a result, in July 2023, Vicor filed a complaint with the ITC alleging that Foxconn, among others, was unlawfully importing power converter modules that infringed Vicor's patents.

The ITC is a federal agency with a range of trade-related responsibilities. One of them is to investigate complaints brought under Section 337 of the Tariff Act of 1930 that allege unfair competition in connection with imported goods, such as the infringement of U.S. intellectual property rights. See 19 U.S.C. § 1337 ("Section 337"). Each investigation is assigned to an

Administrative Law Judge (ALJ), who holds a hearing and issues an initial ruling. See 19 C.F.R. §§ 210.10, 210.36, 210.61. The ITC reviews the ALJ's ruling and renders a final determination. Id. § 210.42. It can also elect not to review the ALJ's ruling, in which case that ruling becomes the ITC's final decision. Id. § 210.42(h). Additionally, the ITC may issue remedial orders, such as orders excluding the challenged products from entry into the United States. See 19 U.S.C. § 1337(d). The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over final determinations by the ITC on claims made under Section 337. See 28 U.S.C. § 1295(a)(6).

The same day that Vicor filed a complaint with the ITC, it also sued Foxconn and others for patent infringement in the United States District Court for the Eastern District of Texas. Foxconn and the other defendants moved to stay the Texas proceedings pursuant to Section 1659. The district court granted the motion, staying the case pending resolution of the ITC complaint.

Several months after Vicor filed its ITC complaint, Foxconn initiated an arbitration in China before the China International Economic and Trade Arbitration Commission (CIETAC). Foxconn argued that Vicor had agreed to arbitrate their current dispute, pointing to the arbitration terms ("Arbitration Terms") contained in the purchase orders ("Purchase Orders") it repeatedly

sent to Vicor during their power converter module transactions. CIETAC accepted the arbitration in December 2023.

Foxconn then asked the ITC to terminate its proceedings in favor of the CIETAC arbitration. It also argued that Vicor was bound by the license terms in the Purchase Orders ("License Terms"), which it claimed granted Foxconn a license to Vicor's patents and therefore undermined Vicor's infringement claim against it. In January 2024, the ALJ refused to dismiss the ITC proceeding in favor of arbitration, finding that Foxconn had waived its right to arbitrate by participating in the ITC proceeding for months without invoking that right. Several weeks later, Vicor moved for a summary determination by the ALJ that it was not bound by the Purchase Orders and had not granted a license to Foxconn.

### B. Procedural History

After Foxconn initiated arbitration in China, Vicor filed a new lawsuit against it, this time in the United States District Court for the District of Massachusetts (where Vicor is headquartered). Vicor maintained that it had never agreed to arbitrate and thus could not be forced into proceedings before CIETAC. In its complaint, Vicor requested (1) an injunction staying the CIETAC arbitration and preventing Foxconn from prosecuting it, (2) a declaratory judgment that Vicor is not bound by the Arbitration Terms, and (3) a declaratory judgment that Vicor is not bound by the License Terms.

Vicor then filed a series of motions in the Massachusetts lawsuit.  On January 9, 2024, Vicor moved for preliminary and permanent injunctions against the CIETAC arbitration and for a declaration that Foxconn lacked a license to use Vicor's intellectual property.  Three days later, Vicor moved for a temporary restraining order (TRO) enjoining the arbitration.  The thrust of each of these motions was that Vicor could not be compelled to arbitrate before CIETAC because it had never agreed to the terms in the Purchase Orders.  The district court granted Vicor's motion for a TRO.

In response, Foxconn filed an emergency motion requesting that the district court issue a stay under Section 1659 and vacate the TRO.  Foxconn argued that under Section 1659's plain text, the overlap of issues between the Massachusetts action and the ITC action triggered its right to obtain a stay.  The district court agreed that Section 1659 applied given its plain text.  See Vicor Corp. v. FII USA, Inc., No. 24-cv-10060-LTS, 2024 WL 1675681, at *2 (D. Mass. Feb. 16, 2024).  Nevertheless, it denied Foxconn's motion to the extent that it sought to vacate the TRO and to preclude entry of Vicor's requested preliminary injunction.  See id. at *3-4.  The district court referenced the All Writs Act, which provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions."  See id.; see also 28 U.S.C. § 1651(a).  It also cited its inherent

authority to preserve its jurisdiction.  See Vicor Corp., 2024 WL 1675681, at *3.  Thus, it concluded that it could grant Vicor preliminary relief.  See id. at *3-4.

With the TRO still in force, the district court turned to Vicor's motion for a preliminary injunction.  Foxconn opposed the motion; it reiterated that Section 1659 required the district court to stay the proceedings and argued on the merits that Vicor had accepted the terms in the Purchase Orders, including an agreement to arbitrate any disputes.  Consistent with its order entering the TRO, the district court rejected Foxconn's arguments.  See Vicor Corp. v. FII USA, Inc., No. 24-cv-10060-LTS, 2024 WL 3548786, at *16 (D. Mass. June 24, 2024).  In a detailed analysis, the court concluded that Vicor was likely to succeed on the merits of its claim that it had not agreed to the Purchase Orders (and therefore had never agreed to arbitrate its disputes with Foxconn). See id. at *9-14.  The court also reaffirmed its prior conclusion that Section 1659 did not preclude the preliminary relief that Vicor sought.  See id. at *16.  After granting Vicor's request for a preliminary injunction of the arbitration, it stayed any further proceedings in the case pending final resolution of the ITC action. See id.

## II. STANDARD OF REVIEW

We review the district court's entry of a preliminary injunction for abuse of discretion.  See OfficeMax, Inc. v.

Levesque, 658 F.3d 94, 97 (1st Cir. 2011). Under that umbrella standard, we evaluate any legal issues de novo. See id.

### III. DISCUSSION

The district court concluded that Section 1659 applies to this case, but it nevertheless granted Vicor's request for a preliminary injunction of the CIETAC arbitration, relying on the All Writs Act and its inherent authority. Foxconn argues that, in granting the injunction, the district court violated Section 1659. By contrast, Vicor asks us to affirm the injunction, contending that Section 1659 does not apply to this case at all because it is not a parallel infringement action. We agree with the district court that Section 1659 applies here, but we conclude that the provision's plain text required the court to grant an immediate stay upon Foxconn's request. Thus, we vacate the preliminary injunction.

### A. Applicability of Section 1659

Section 1659 requires a district court to stay certain proceedings between parties that are also involved in a proceeding before the ITC. The relevant text of Section 1659 provides:

> (a) Stay. -- In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in

> the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within --
>
> > (1) 30 days after the party is named as a respondent in the proceeding before the Commission, or
> >
> > (2) 30 days after the district court action is filed, whichever is later.

28 U.S.C. § 1659(a) (emphasis added).

As the parties agree, the threshold issue we must consider is whether Vicor's claims against Foxconn in this case "involve[] the same issues involved in the proceeding before the Commission." Id. If so, and if no other source of authority permitted the district court to deny Foxconn's Section 1659 stay request, we must vacate the preliminary injunction.

We conclude that the plain text of Section 1659 encompasses Vicor's claims in this case. See Evans v. Akers, 534 F.3d 65, 69 (1st Cir. 2008) ("As in any case of statutory construction, we begin our analysis with the plain language of the statute.") Critically, Vicor and Foxconn do not dispute the meanings of "claim," "issues," or "involved" in Section 1659, nor do they dispute that Vicor's claims in this case involve issues that are involved in the ITC proceeding.

We agree with Vicor that "claim" means "cause of action" and that "issue" means "fundamental factual and legal allegation." See Claim, Black's Law Dictionary (6th ed. 1990) (defining "claim"

as "cause of action"); Issue, Black's Law Dictionary (6th ed. 1990) (defining "issue" as "[a] single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other"). Applying these definitions, Section 1659 requires a stay of "proceedings in the civil action with respect to any [cause of action] that involves the same [fundamental factual and legal allegations] involved in the proceeding before the Commission."

The district court proceedings here fit squarely within this reading of Section 1659. In its complaint in this case, Vicor brought claims under the Federal Arbitration Act, seeking to enjoin the CIETAC arbitration, as well as the Declaratory Judgment Act, seeking orders declaring that "Vicor is not bound by" the License Terms or the Arbitration Terms. Because the License and Arbitration Terms were incorporated into the Purchase Orders, these causes of action hinge on whether Vicor is bound by the terms in the Purchase Orders. Accordingly, Vicor seeks a finding in district court that it did not agree to the Purchase Orders' terms. See Vicor Corp., 2024 WL 3548786, at *5-14. Vicor also seeks a finding in the ITC proceeding that it did not agree to the Purchase Orders' terms. Thus, whether Vicor was bound by the Purchase Orders is a "fundamental factual and legal allegation" involved in both the district court and ITC proceedings. For that reason, "proceedings in [this] civil action" must be stayed "with respect

to [each of Vicor's causes of action]" because they "involve" these allegations.

Vicor resists this conclusion, focusing on the meaning of the phrase "the same issues" in Section 1659. It argues that "the same issues" must mean "all the same issues." In Vicor's view, Section 1659 would apply here only if it had sued Foxconn for infringing the same patents involved in Vicor's ITC complaint -- as it did in the Texas litigation.

But Vicor then turns its own argument about the phrase "the same issues" on its head. It contends that an ITC proceeding and a district court proceeding never have all the same issues. That is because, as Vicor points out, infringement claims before the ITC and the district courts have different elements. For example, ITC claimants must prove the existence of a domestic industry, which is not an element of a patent infringement claim in district court.[1] See 19 U.S.C. § 1337(a); John Mezzalingua Assocs., Inc. v. Int'l Trade Comm'n, 660 F.3d 1322, 1327-28 (Fed. Cir. 2011). Vicor therefore argues that Section 1659 is ambiguous because a plain text reading "makes no sense," requiring us to consult legislative history to construe the statute.

---

[1] Vicor also points out that district court plaintiffs generally seek damages, which are not available in Section 337 actions before the ITC. See 19 U.S.C. § 1337.

We disagree with Vicor's argument that the phrase "the same issues" in Section 1659 is ambiguous. First, Vicor's reading requires inserting the word "all" into the statute, something we cannot do.[2]  See Romag Fasteners, Inc. v. Fossil, Inc., 590 U.S. 212, 215 (2020). Second, "[a] statute is not ambiguous unless 'it admits of more than one reasonable interpretation.'" Correa-Ruiz v. Fortuño, 573 F.3d 1, 9 (1st Cir. 2009) (emphasis added) (quoting United States v. Godin, 534 F.3d 51, 56 (1st Cir. 2008)). An interpretation that, by Vicor's own admission, "make[s] no sense" is not a reasonable interpretation.  See Gen. Motors Corp. v. Darling's, 444 F.3d 98, 108 (1st Cir. 2006) (explaining that we "avoid statutory constructions that create absurd, illogical or inconsistent results" (citation omitted)).

Foxconn's reading of Section 1659, by contrast, does make sense: Foxconn contends that the phrase "the same issues" means what it says and applies whenever a district court proceeding shares issues with an ITC proceeding. We agree. Because this "straightforward interpretation" of the terms of the statute "produces an entirely plausible result, we are not obligated to consult other aids to statutory construction." United States v.

---

[2] Vicor also argues in its brief that "same" means "identical." But this proposed reading runs into the same problems we discuss below.

Nason, 269 F.3d 10, 16 (1st Cir. 2001). Thus, our inquiry could end here.

But even if we were to consult legislative history, that history does not support Vicor's position that Section 1659 only permits a stay of parallel enforcement proceedings. Vicor emphasizes that Section 1659 was enacted as part of the Uruguay Round Agreements Act, which implemented aspects of several international trade agreements. See 19 U.S.C. § 3511. Specifically, Congress enacted Section 1659 "to ensure that United States procedures for dealing with alleged infringements by imported products are consistent with . . . 'national treatment' rules," which prohibit some forms of discrimination between domestic and imported goods. In re Princo Corp., 486 F.3d 1365, 1368 (Fed. Cir. 2007). Vicor argues that Section 1659 was designed to "provide an equal playing field among domestic and foreign producers," given that a company can bring simultaneous actions against foreign goods in the ITC and district court, but ITC proceedings are not available to enforce intellectual property rights against domestic goods. See 19 U.S.C. § 1337(a); H.R. Rep. No. 103-826(I), at 142 (1994).

This legislative history does not suggest Section 1659 is as narrow as Vicor contends. If anything, interpreting Section 1659 to apply to ITC and district court proceedings with any overlapping issues provides more protection to producers of

foreign goods because such a reading reduces the likelihood that they would have to defend simultaneously in the ITC and the district court. Thus, accepting Vicor's argument that the purpose of Section 1659 was to level the playing field between domestic and foreign producers does not support its claim that Section 1659 only covers parallel enforcement lawsuits.

Vicor also points us to language in the House Report that accompanied the Uruguay Round Agreements Act, H.R. Rep. No. 103-826(I), at 141, to argue that Section 1659 is limited to parallel enforcement proceedings, but this language does not convince us either. The Report explains that Section 1659 was added "to address the possibility that infringement proceedings may be brought against imported goods in two forums at the same time." Id. The Report continues:

> The new section requires a district court hearing an infringement case to stay its proceedings, at the request of a respondent in a [S]ection 337 proceeding, with respect to any claim that involves the same issues as those pending before the Commission. Such issues would include questions of patent validity, infringement, and any defenses that might be raised in both proceedings.

Id. Vicor argues that the use of the phrases "infringement proceedings" and "infringement case" in the House Report means that the statute applies primarily to infringement cases. But even Vicor concedes that Section 1659 can apply to other,

non-infringement enforcement proceedings.[3] Thus, Vicor provides no reason to read this legislative history to limit the statute's scope to infringement cases. Further, even if Congress's primary purpose was to stay infringement proceedings, that does not mean its intent was solely to stay infringement proceedings. "[E]ven if Congress explicitly asserts a particular purpose, the courts do not assume that it intended to pursue that purpose to the exclusion of all others." United States v. Cano-Flores, 796 F.3d 83, 93 (D.C. Cir. 2015). And as Foxconn points out, the Report expressly contemplates that "defenses" shared between the proceedings -- like Foxconn's license defense here -- may give rise to a stay, further undermining Vicor's reading of this legislative history.[4]

Finally, we have carefully considered the parties' representation that they are not aware of any other court that has

---

[3] Unfair import investigations conducted by the ITC are not limited to infringement actions -- they also include, for example, false advertisement and antitrust violations. See Office of Unfair Import Investigations (OUII), U.S. Int'l Trade Comm'n, https://perma.cc/G9GC-CYAY (last visited Feb. 28, 2024). A reading of Section 1659 that would preclude the stay of a directly analogous false advertisement proceeding in district court simply because it is not an "infringement proceeding" would defy the plain text of the statute and common sense.

[4] For the reasons we have just laid out, we do not find persuasive the analysis in Sandisk Corp. v. Phison Electronics Corp., 538 F. Supp. 2d 1060 (W.D. Wis. 2008), which held that Section 1659 applies only to patent infringement actions that allege infringement of the same patent asserted in an ITC proceeding. See id. at 1064-65.

issued a Section 1659 stay in a case that did not involve parallel enforcement proceedings.  We note that in some cases, the "way that [a statute] has been implemented" can inform our analysis.  See Ithier v. Aponte-Cruz, 105 F.4th 1, 7, 12 (1st Cir. 2024).  But all Vicor points to is the fact that no court has issued a stay in a non-infringement case before.  That bare fact, without more, does not allow us to sidestep the plain text of the statute.

### B. Other Bases for Granting Injunctive Relief

Despite determining that Section 1659 applied to Vicor's claims, the district court concluded that the provision did not tie its hands.  See Vicor Corp., 2024 WL 1675681, at *3.  It cited the All Writs Act and the court's inherent authority to preserve its jurisdiction as a basis for granting preliminary relief.  See id. at *3-4.

We disagree with the district court's ultimate conclusion that it could provide relief to Vicor even in the face of Section 1659.  The court reasoned that Section 1659 "does not divest this Court of jurisdiction in this matter, nor does it preclude the Court from taking action to protect its jurisdiction."  Id. at *3.  Although we agree that Section 1659 does not permanently divest district courts of jurisdiction, it is a timing rule that mandates a temporary stay of cases over which a district court would otherwise have jurisdiction.  See Fuji Photo Film Co. v. Benun, 463 F.3d 1252, 1256 (Fed. Cir. 2006) ("[S]ection 1659

places limits on the timing of parallel actions." (emphasis added)); In re Princo Corp., 478 F.3d 1345, 1356-57 (Fed. Cir. 2007) (ordering district court to stay damages proceedings). And no source of authority identified by the court or by the cases it cited trumps Section 1659. For example, the district court cited Rosselló-González v. Calderón-Serra, 398 F.3d 1 (1st Cir. 2004), to support its conclusion that it may take action to "protect its jurisdiction." Vicor Corp., 2024 WL 1675681, at *3. But in that case, we held that the district court abused its discretion by granting a purportedly jurisdiction-preserving preliminary injunction. See Rosselló-González, 398 F.3d at 18. To be sure, we noted that "[a]cting pursuant to § 1651(a) [the All Writs Act], a federal court may issue an injunction as a means to preserve its jurisdiction." Id. at 14. But the All Writs Act provides no such authority here because it cannot restore authority that Congress has expressly foreclosed. See Trenkler v. United States, 536 F.3d 85, 97 (1st Cir. 2008) ("[W]hen a statute . . . specifically addresses a particular class of claims or issues, it is that statute, not the All Writs Act, that takes precedence."). Nor can the court's inherent authority to protect its jurisdiction support the preliminary injunction, because "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." In re

Petition for Ord. Directing Release of Recs., 27 F.4th 84, 90 (1st Cir. 2022) (quoting Dietz v. Bouldin, 579 U.S. 40, 45 (2016)).[5]

Further, nothing in the text of Section 1659 indicates that the mandatory stay requirement does not apply to certain forms of relief.  And we have found no authority suggesting that Section 1659 excludes preliminary injunctions.  See Fuji Photo Film Co., 463 F.3d at 1256 (holding that district court had authority to issue preliminary injunction only because the ITC had reached a final determination).[6]  Thus, we conclude that the

---

[5] The district court also reasoned that, because courts have the authority to compel arbitration, they have the authority to enjoin arbitration.  See Vicor Corp., 2024 WL 1675681, at *4.  We agree that courts generally have the authority to enjoin arbitration.  But Section 1659 requires a district court to hold off on exercising authority it otherwise would have.

[6] The unpublished district court decisions cited by Vicor do not counsel otherwise.  In Broadcom Corp. v. Qualcomm Inc., No. 05-cv-00468-JVS, 2005 WL 5925585 (C.D. Cal. Sept. 26, 2005), the district court lifted a Section 1659 stay to prevent the parties from litigating the same issues in another forum, in part because the forum selection issue was not "before the [ITC]."  Id. at *1.  Similarly, in Microsoft Corp. v. TiVo, Inc., No. 11-cv-00134-RSM, 2011 WL 1930640 (W.D. Wash. May 19, 2011), the court held that it could rule on a motion to transfer venue despite Section 1659 because it involved "procedural matters that [were] not before the ITC," and not proceedings "inextricably tied to the merits of the patent claims."  Id. at *2 & n.1.  Here, by contrast, the arbitrability issue is before the ITC, and it is tied to the issue of whether Vicor is bound by a contract that would also defeat its infringement claim via the License Terms.

district court erred in granting a preliminary injunction despite Foxconn's request for a stay.[7]

We recognize that in enjoining the CIETAC arbitration, the district court sought to advance the purpose of Section 1659 by allowing the ITC action to proceed undisturbed by an arbitration to which Vicor purportedly had never agreed. But the plain text of Section 1659 supports Foxconn's claim that it was entitled to a stay here.

## IV. CONCLUSION

For all these reasons, we **vacate** the district court's order preliminarily enjoining the CIETAC arbitration and **remand** for proceedings consistent with this opinion.[8] Each party shall bear their own costs.

---

[7] Given our conclusion that Section 1659 applies to Vicor's claims in this case and that neither the All Writs Act nor any source of inherent authority allowed the district court to enter a preliminary injunction, we do not address the other issues raised by Foxconn on appeal, including whether the preliminary injunction violated comity or should be vacated on the merits.

[8] Vicor argues that even if Section 1659 were to apply to this action, the arbitration should remain enjoined. Vicor explains that by the time Foxconn requested a stay, the district court had already entered a TRO, and Section 1659 does not require a court to vacate prior orders. But the TRO provided that it would "expire upon [the district court's] resolution of the pending motion for a preliminary injunction." Thus, it expired when the district court ruled on the preliminary injunction motion in June 2024, and we need not vacate it.